UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                Case No. 6:17-cr-268-Orl-41DCI

JAMUS DIXON,

    Defendant.
_____/

**DEFENDANT'S REPLY TO THE GOVERNMENT'S RESPONSE (DOC. 52)[1]**

Pursuant to this Court's Order (Doc. 56) authorizing a brief reply to the government's response (Doc. 52), Defendant Jamus Dixon, through counsel, replies. The government's response essentially mischaracterizes the factual error at issue in Mr. Dixon's motion (Doc. 46) and fails to appreciate the impact of the newly-disclosed photographs.[2]

**INTRODUCTION**

Mr. Dixon seeks to have this Court correct its finding that "there was no gate present." Doc. 46 at 1 n. 2; 3; Doc. 45 at 3 n. 7. Correcting this factual error changes the analysis of the

---

[1] The government has amended Doc. 52 twice to fix a typographical error in the title (Doc. 53) and to add an omitted page number to a citation (Doc. 57). The substance of Docs. 52, 53, and 57 are otherwise identical.

[2] Defense counsel requested to view the evidence on December 14, 2017 (Copy of request via electronic mail available upon request). The government finally granted defense counsel access to view the evidence on January 30, 2018. The photographs were not available or accessible during the evidence viewing; ergo, logic dictates had defense been granted access prior to Motion to Suppress hearing, the photographs still would not have been available to defense counsel for viewing and inspection. Moreover, defense counsel specifically requested these photographs two days before the suppression hearing to which she never received a response (Copy of request via electronic mail available upon request).

1

officers' credibility weighed against Mr. Rainey's and any conclusions drawn from it. In addition, the newly-disclosed photographs provide more evidence for this Court to consider for its Fourth Amendment analysis. The ultimate determination for this Court to make is whether, under all the circumstances accurately presented, it was reasonable for the officers to enter the porch without permission.[3] Because it was not, this Court should grant Mr. Dixon's Motion to Suppress.

## MEMORANDUM OF LAW

The government argues the "clear factual error" claim is false because "[t]here is no evidence in the form of testimony or otherwise that the officers were impeded in any way from approaching the front door of the residence, where they encountered the defendant." Doc. 52 at 5. The factual error claim is not that the officers were impeded when they entered the porch; it is that there was, in fact, a gate present. The government actually concedes that the gate was present.[4] What the government does not do is fully appreciate the import of the newly-

---

[3] This Court found Mr. Rainey's felony conviction more damaging to his credibility than the officers' sustained citizen complaints was to theirs. Doc. 45 at 10. As a result, this Court found the officers' testimony about their peaceable behaviors more credible than Mr. Rainey's testimony about the officers' threatening behaviors. This testimony, however, was only relevant to whether Mr. Dixon truly consented to a search of the residence. Although this Court found the consent was not coerced, *see* Doc. 45 at 8, there was no evidence Mr. Dixon's consent was not the product of the officers' entry on the porch. To the extent such an entry was unlawful, it was the government's burden to show the consent was not "by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." *United States v. Delancy*, 502 F.3d 1297, 1308 (11th Cir. 2007) (citations omitted). The government offered no such evidence. Thus, the only issue for this Court to consider is whether the officers' initial entrance on the porch was unlawful.

[4] *Id.* ("The existence of a removable gate off to the side of the entrance to the porch as shown in a photograph that was taken on the date of the search in this case neither contradicts the Court's Order nor any testimony offered at the suppression hearing.")

disclosed photographs to this Court's analysis. It was because of the newly-disclosed photographs that the "clear factual error" arose.

The newly-disclosed photographs also reveal an opaque black tarp enclosing most of the porch rather than a simple screen.  This is a significant fact the government's response simply fails to address.  At the suppression hearing, Detective Rivas ("Rivas") testified: "I can remember seeing a gentleman on the porch. There may have been a screen there. I know I can see through it though because I could see the guy on the porch." Doc. 40 at 18.  As this Court noted, Detective Howard ("Howard"), following just a few feet behind Rivas, did not recall seeing anybody on the porch.  Doc. 45 at 2 n. 5.  There is no explanation as to why Howard did not recall seeing a person on the porch but Rivas did.   In any event, Mr. Dixon would submit that the opaque black tarp is evidence the front porch was, in fact, more of a private area "which the activity of home life extends," *Florida v. Jardines*, 569 U.S. 1, 7 (2013), rather than a "semi-private area" where "the public would be expected to go." *Coffin v. Brandau*, 642 F.3d 999, 1012 (11th Cir. 2011).

The government further argues that the presence of the "doggie gate" has "no bearing on the Court's findings and ruling on the motion to suppress, particularly on the Court's credibility findings regarding the detectives who testified at the hearing."  Doc. 52 at 7.  Because of the officers' inability to recall a "doggie gate" that was clearly present, their credibility should be reconsidered.  This is *especially* cogent because the officers' testimony at the suppression hearing directly contradicted what was previously relayed to a state court judge under oath for the search warrant.  Specifically, Rivas and Howard testified at the suppression hearing that Mr. Dixon was standing inside the house behind the screen door when

3

Mr. Dixon allegedly gave the officers permission to enter. *See* Doc.40 at 7 (Rivas's testimony); Doc. 40 at 33 (Howard's testimony). However, in the state Search Warrant Affidavit completed by Detective James ("James")(and submitted as Exhibit 1 to the government's initial response, *see* Doc. 37-1 at 2), he wrote: "The Detectives [Rivas and Howard] responded to the target residence in reference to a suspect who had a felony arrest warrant. Upon their arrival, they made contact with a Black male, who was later identified as James D. Dixon. ***Dixon was standing outside of the target residence on the screened-in front porch***." Doc. 37-1 at 2 (Emphasis added); *see also* Doc. 17 at 19 (James's testimony at preliminary hearing). Regardless of whether Mr. Dixon was standing on the porch or was inside the house when the officers approached him, the fact remains that the officers were on the porch.

Finally, since this Court found the porch was indeed "curtilage," Doc. 45 at 7, the question then becomes whether the officers had an "implied license" to enter it. *Jardines*, 569 U.S.at 10. Although this Court initially found the officers did have such license, *id.* at 7-8, this Court should reconsider based on the newly-disclosed photographs. "A license may be implied from the habits of the country" and in this case is determined by whether the conduct of Rivas and Howard was "no more than any private citizen might do." *Id.* at 8. In other words, "[c]omplying with the terms of that traditional invitation does not require fine-grained legal knowledge; it is generally managed without incident by the Nation's Girl Scouts and trick-or-treaters." *Id*. To put it in more practical terms, was the officers' conduct in entering the porch without first seeking permission "customary, usual, reasonable, respectful, ordinary, typical, nonalarming, etc.?" *Jardines*. 569 U.S. at 8 n. 2. In light of the black tarp enveloping most of

4

the porch, the presence of Mr. Rainey on the porch, and the "doggie gate," Mr. Dixon respectfully submits that it was not.

WHEREFORE, Mr. Dixon respectfully moves the Court to reconsider its Order denying his Motion to Suppress based on newly-disclosed evidence and grant his Motion to Suppress.

### CERTIFICATE OF SERVICE

I Hereby Certify that this pleading was filed with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to the following: E. Jackson Boggs, Jr., Assistant United States Attorney, this the 31st day of January, 2018.

Respectfully submitted,

DONNA LEE ELM
FEDERAL DEFENDER

*s/Karla M. Reyes*
Karla M. Reyes
Assistant Federal Defender
Florida Bar No.0072652
201 S. Orange Avenue, Suite 300
Orlando, FL 32801
Telephone: 407-648-6338
Fax: 407-648-6095
E-Mail: karla_reyes@fd.org
Attorney for Jamus Dixon